## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KHALED MOHAMMED, )
)
Plaintiff, )
) Case No. 03 C 6849
v. ) Judge Kennelly
)
CARMAX, )
)
Defendant. )

### NOTICE OF MOTION

**TO:**    Khaled Mohammed, Pro Se
10832 S. Lavergne
Oak Lawn, IL 60453

   **PLEASE TAKE NOTICE** that on October 28, 2003, at 9:30 a.m., the
undersigned will appear in the Courtroom of the Honorable Kennelly, Courtroom 2103,
Dirksen Federal Building, 219 S. Dearborn, Chicago, Illinois, and then and there present
Defendant's Motion to Compel Arbitration and Stay Court Proceedings, a copy of which
are herewith served upon you.

                                        CARMAX, INC.

                                        By: _____
                                              One of its attorneys

John J. Michels, Jr., Esq.
Mark J. Sheppard, Esq.
McGuireWoods LLP
150 N. Michigan, Ste. 2500
Chicago, IL 60601
(312) 558-1000



## CERTIFICATE OF SERVICE

The undersigned certifies that (s)he served a copy of the foregoing Notice of Motion and accompanying Defendant's Motion to Compel Arbitration and Stay Court Proceedings and memorandum in support thereof on the individuals to whom it is directed by U.S First Class Mail on October 20, 2003, with proper postage prepaid.

\\LAB\407223.1

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLIONIS
EASTERN DIVISION**

KHALED MOHAMMED,         )
                          )
        Plaintiff,           )
                          )
        v.                   )     Case No. 03 C 6849
                          )     Judge Kennelly
CARMAX,                 )
                          )
        Defendant.        )

DOCKETED
OCT 29 2003

## DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS

Defendant CarMax, Inc. ("CarMax"), by its counsel, McGuireWoods LLP, hereby moves to compel arbitration of the claims brought by Plaintiff Khaled Mohammed, *pro se*, ("Mohammed") and to stay proceedings pending arbitration, and states as follows:

1. On September 29, 2003, Mohammed filed a Complaint in the District Court for the Northern District of Illinois, Case No. 03-C-6849.

2. Mohammed had applied for employment at CarMax in March 1998. His CarMax employment application contained an arbitration clause requiring that all disputes between himself and CarMax arising out of his application, employment or termination, would be subject to mandatory arbitration. This included employment discrimination claims including those that had been submitted to an agency for determination.

3. CarMax discharged Mohammed from employment and he subsequently filed a charge alleging national discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed the charge and issued him a

right-to-sue letter. He then filed the Complaint in this matter alleging the same discrimination and retaliation claims.

4.    The mandatory and binding arbitration agreement governs resolution of all disputes between Mohammed and CarMax. That agreement is valid and enforceable, binding on the parties, and governs Mohammed's claims in this case.

WHEREFORE, for the reasons stated above and in CarMax's accompanying Memorandum in Support, this Court should compel arbitration of Mohammed's claims against CarMax and stay these proceedings pending the outcome of that arbitration.

                                        CARMAX, INC.

                                        By: _____
                                              One of its attorneys

John J. Michels, Jr., Esq.
Mark J. Sheppard, Esq.
McGuireWoods LLP
150 N. Michigan Av, Suite 2500
Chicago, IL 60601
Counsel for Defendant, CarMax, Inc.

::ODMA\PCDOCS\LABOR\407023\1

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLIONIS**
**EASTERN DIVISION**

KHALED MOHAMMED,          )
                          )
        Plaintiff,        )
                          )
    v.                    )    Case No. 03 C 6849
                          )    Judge Kennelly
CARMAX,                   )
                          )
        Defendant.        )

*DOCKETED*
*OCT 29 2003*

**DEFENDANT'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION TO COMPEL ARBITRATION AND STAY THIS**
**PROCEEDING PENDING ARBITRATION**

## I.    INTRODUCTION

COMES NOW the Defendant Carmax, Inc. ("CarMax"), by its counsel, McGuire Woods LLP, and files its Memorandum in Support of its Motion to Compel Arbitration and Stay This Proceeding Pending Arbitration.

Khaled Mohammed ("Mohammed") brought a *pro se* Complaint against CarMax alleging national origin harassment and retaliation. In applying for employment at CarMax, Mohammed signed an agreement to arbitrate any employment-related disputes. Mohammed's claims in this matter fall squarely within the area governed by the arbitration agreement. To date, Mohammed has not filed a demand for arbitration, nor has he raised any of his claims in an arbitration forum.

The Federal Arbitration Act and its interpreting case law dictate that this Court should enforce CarMax's arbitration agreement and that the Court should stay this proceeding and compel the parties to arbitrate this dispute. As set forth in more detail

below, CarMax urges this Court to grant Carmax's Motion to Compel and stay this matter

pending arbitration.

## II.    FACTUAL BACKGROUND

Mohammed applied for an automobile technician position at CarMax on March 2,

1998. His application is attached as Exhibit A. The application includes a Dispute

Resolution Agreement ("the Agreement"), which specifically states that applicants who

"wish to be considered for employment [must] read and sign [the Agreement]. You will

not be considered as an applicant until you have signed the Agreement. Included in this

application is the CarMax Dispute Resolution Process and Procedures." (Exh. A at 2).

The Agreement gives CarMax employment applicants three days to withdraw

their consent to the Agreement and end the application process. (Exh. A at 2). It

"recognizes that differences possibly may arise between [the applicant and CarMax]"

and that "it is in the interest of both CarMax and [the applicant] that disputes be resolved

in a manner that is fair, private, expeditious, economical, final and less burdensome or

adversarial than court litigation." (Exh. A at 2). The Agreement also states:

> Except as set forth below, I agree that I will settle any and all previously
> unasserted claims, disputes, or controversies arising out of or relating to
> my application or candidacy for employment, employment and/or
> cessation of employment with CarMax, exclusively by final and binding
> arbitration before a neutral arbitrator. By way of example only, **such
> claims include claims under federal, state and local statutory or
> common law, such as the Age Discrimination in Employment Act,
> Title VII of the Civil Rights Act of 1964, as amended, including the
> amendments of the Civil Rights Act of 1991, the Americans with
> Disabilities Act**, the Family Medical Leave Act, the law of contract or
> tort.

> I understand that if I do file a lawsuit regarding a dispute arising out of or
> relating to my application or candidacy for employment, employment or
> cessation of employment, CarMax may use this Agreement in support of

2

> its request to the court to dismiss the lawsuit and require me instead to use arbitration....
>
> I further understand that I may still file administrative charges with the Equal Employment Opportunity Commission or similar federal, state or local agency, but that upon receipt of a right-to-sue letter or similar administrative determination, I shall arbitrate any claim that I may have against CarMax.

(Exh. A at 2) (emphasis added). The Agreement also states that:

> I recognize that if I sign the Agreement and do not withdraw within three days of signing I will be required to arbitrate, as explained above, employment-related claims which I may have against CarMax, whether or not I become employed by CarMax.

(Exh. A at 3).

Mohammed signed the Agreement when he applied for employment at CarMax. CarMax hired Mohammed as a Master Automobile Technician in March 1998. CarMax terminated his employment on January 18, 2001. After filing a charge of discrimination, and receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission, he brought this action. Mohammed did not file an arbitration demand, and arbitration between Mohammed and CarMax over the claims in his Complaint has not occurred.

## III. ARGUMENT

This Court should stay this litigation and compel Mohammed to arbitrate his claims against CarMax, because: (1) the parties entered into a valid and binding arbitration agreement; (2) each of Mohammed's claims falls squarely within the scope of the arbitration provision contained in the Agreement; and (3) no waiver of the Agreement occurred.

3

### A.    Standard of Review.

In considering a motion to compel arbitration, the Court applies the standards found in the Federal Arbitration Act, 9 U.S.C.A. § 2, *et. seq.* (West Stat. 2003), which provides that an arbitration clause in a "contract evidencing a transaction involving commerce ...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Double Sunrise, Inc. v. Morrison Management Specialist, Inc.*, 149 F.Supp.2d 1039, 1043 (N.D. Ill. 2001)(quoting the FAA, 9 U.S.C. § 2).

The Federal Arbitration Act ("FAA") reflects a legislative recognition of "the desirability of arbitration as an alternative to the complications of litigation." *Wilko v. Swan*, 346 U.S. 427, 431 (1953). *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (9 U.S.C. § 2 is "a congressional declaration of a liberal federal policy favoring arbitration agreements").

The Act further provides that proceedings in federal court <u>must</u> be stayed whenever the court finds that a claim before it is subject to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement</u>, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added); *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50, 53 (7th Cir. 1995).

4

These statutory provisions are mandatory and binding on federal courts: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The policy behind the FAA warrants that federal courts interpret arbitration clauses broadly to include all claims that could reasonably be included within their scope. In *Double Sunrise*, this Court acknowledged this mandatory rule of construing arbitration agreements:

> Once it is clear that the parties have a contract that provides for arbitration of the contested issues between them, the arbitration provisions must be given their broadest possible meaning.

*Double Sunrise*, 149 F.Supp.2d at 1043.

Thus, even if the agreement at issue is ambiguous with regard to whether a claim is subject to arbitration, the trial court should construe the agreement as covering the claim. The Supreme Court has held that under the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25; *accord, Matthews*, 72 F.3d at 53. "In interpreting the construction of the contract language, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (*citing Moses H. Cone Mem. Hosp.*, 460 U.S. at 24). A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible

5

of an interpretation that covers the asserted dispute." *Matthews,* 72 F.3d at 53. "Doubts should be resolved in favor of coverage." *Id.*

## B. Mohammed's Claims Are Clearly Arbitrable

This Court stated that, "In order to determine whether a claim is arbitrable, we must determine: 1) whether there is an agreement to arbitrate; 2) whether the claims fall within the scope of that agreement; and 3) whether there has been a waiver of the right to arbitrate." *Nieminski v. John Nuveen & Co.,* No. 96-C-1960, 1997 WL 43241 at * 2 (N.D. Ill. Jan. 23, 1997)(quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). Because CarMax and Mohammed entered into an arbitration agreement and there is no waiver, the Court should grant CarMax's motion.

### 1. Mohammed and CarMax Are Parties to a Valid Agreement to Arbitrate this Dispute.

There can be no doubt in this case that CarMax and Mohammed entered into a valid and enforceable agreement to submit all disputes between them to arbitration. The application signed by Mohammed contained the signed Agreement in which Mohammed expressly agreed that he would, "arbitrate" "all employment-related claims" against CarMax. (Exh. A at 3).

In determining whether an arbitration agreement in an Illinois contract is valid, courts examine the agreement under Illinois contract law as they would any other contract. *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366-67 (7th Cir. 1999). Courts consider the agreement at issue to be supported by adequate consideration so long as its provisions bind both parties. *Id.* at 367-68. That one party may have had unequal bargaining power is not a basis for invalidating an Illinois arbitration agreement. *Id. at*

6

*367.* Nor is conditioning the worker's employment on his or her signing the arbitration agreement a basis for refusing to enforce an agreement. *Id.*

In the current case, the Agreement is clearly valid under Illinois law. Consideration clearly supports the Agreement since mutual promises to arbitrate bind both parties. That the Agreement is in an employment application and not an employment contract has no bearing on its validity. *See Gilmer,* 500 U.S. at 25 (arbitration agreement in separate pre-employment application binding on employment disputes as any other arbitration clause). Mohammed does not even acknowledge the Agreement in his Complaint, much less criticize it for being invalid on any basis. The Agreement is thus valid and enforceable.

**2.      Mohammed's Claims against CarMax Are Subject to Arbitration**

Every cause of action set forth in Mohammed's Complaint falls within the scope of the arbitration clause to which he agreed. The Agreement's arbitration clause is extremely broad and expressly reaches Mohammed's national origin and retaliation claims:

> [S]uch claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act ....

(Exhibit A at 2).

The Supreme Court and Seventh Circuit have definitively held that arbitration agreements reach employment discrimination claims. *Gilmer,* 500 U.S. at 35; *Tinder v. Pinkerton Security, Inc.,* 305 F.3d 728, 734 (7th Cir. 2003). Even if the Agreement was ambiguous regarding whether Mohammed's claims were arbitrable, the Court is

7

compelled by statute to resolve any ambiguities in favor of arbitration. *See Matthews*, 72 F.3d at 53. The Agreement's broad arbitration clause clearly covers Mohammed's claims in this case. Further, it cannot be said with "positive assurance" that the Agreement is not susceptible to an interpretation that covers Mohammed's claims against CarMax. *Id.* Thus, the Court should compel arbitration.

### 3. No Waiver of the Arbitration Agreement Occurred

Finally, there is no alleged CarMax waiver of the Agreement that would render it unenforceable. Mohammed does not allege waiver in his Complaint. Mohammed's actions in filing a charge of discrimination, which the EEOC investigated and dismissed with a no probable cause finding, did not operate as a waiver. In fact, the Agreement expressly permits Mohammed to file discrimination charges but states that he must arbitrate all such claims upon receiving a right-to-sue letter, as is the case here. (Exh. A at 2).

## IV.    CONCLUSION

The Agreement contains a valid and enforceable arbitration provision. Mohammed's claims are clearly subject to that Agreement. He voluntarily executed the Agreement and now must adhere to this contractual obligation. For the reasons set forth herein, and those that may be stated at a hearing on this matter, CarMax respectfully moves that the Court compel Mohammed to arbitrate his claims against CarMax and stay such claims pending arbitration in accordance with the Agreement.

CARMAX, INC.

By:_____
    One of its attorneys

John J. Michels, Jr., Esq.
Mark J. Sheppard, Esq.
McGuireWoods LLP
150 N. Michigan Av. Suite 2500
Chicago, IL 60601
Counsel for Defendant, CarMax, Inc.

::ODMA\PCDOCS\LABOR\407005\1

9